## APPEAL OF SWINEHART TIRE & RUBBER CO.

Docket No. 1436.   Submitted April 16, 1925.   Decided June 30, 1925.

> The taxpayer made a return of net income for the fiscal year ended August 31, 1917, and' another for the fiscal period September 1 to December 31, 1917.   No complete physical inventory was taken at August 31, 1917, but one was taken at December 31, 1917, which showed a physical inventory of $91,734.12 in excess of the book inventory ; $54,811.13 of the discrepancy was allocated by the Commissioner to the fiscal year ended August 31, 1917, and $36,922.99 to the fiscal period September 1 to December 31, 1917. *Held,* upon the facts, that the allocation of the Commissioner should not be disturbed.

*H. A. Mihills, C. P. A.*, for the taxpayer.
*Arthur H. Fast, Esq.*, for the Commissioner.

Before SMITH, LITTLETON, and TRUSSELL.

This appeal is from a determination of deficiency in income and profits taxes for the fiscal period September 1 to December 31, 1917, in the amount of $27,493.86.

### FINDINGS OF FACT.

The taxpayer kept its books of account and made its income-tax returns upon the basis of a fiscal year ended August 31. An income-tax return was filed for the fiscal period ended August 31, 1917. Owing to the fact that it was difficult to obtain competent help, no complete physical inventory was taken at the close of the fiscal year, and the net income shown in the return was computed on the basis of the book inventory. The last preceding physical inventory was taken at August 31, 1916. During the summer of 1917, the taxpayer obtained permission to make its tax returns upon the basis of the calendar year, and made a short return for the fiscal period September 1 to December 31, 1917. At the last-named date the taxpayer took a physical inventory which showed that its actual inventory was $91,734.12 in excess of its then book inventory. The Commissioner concedes that only a part of this discrepancy should be allocated to the fiscal period September 1 to December 31, 1917. This concession is made upon the basis of the fact that the taxpayer's physical inventory has generally shown that the book inventory is understated to the extent of approximately 4 per cent. The Commissioner

has allocated $54,811.13 of the discrepancy to the fiscal year ended August 31, 1917, and $36,922.99 to the fiscal period September 1 to December 31, 1917. In making this allocation, the Commissioner has first divided the total discrepancy of $91,734.12 into two equal parts; one half has been allocated to the two fiscal periods on the basis of the amount of crude rubber and fabric consumed in each period, the percentages used being 71 and 29; the other half to the periods upon the basis of the amount of crude rubber and fabric consumed in the four months preceding September 1, 1917. In the four months' period here under consideration the percentages used were 48.5 and 51.5, respectively.

The book inventory at August 31, 1917, was $886,369.41 and consisted of the following:

| | |
|---|---:|
| Raw material and supplies | $330, 121. 28 |
| Goods in process | 49, 284. 92 |
| Finished product at Akron | 311, 314. 61 |
| Finished product at branches | 16, 552. 08 |
| Finished product on consignment | 179, 096. 55 |
| Total | 886, 369. 44 |

Although the book inventory of finished product at branches was only $16,552.08, a physical inventory at August 31, 1917, of finished product at branches showed $189,995.49. No physical inventory of the finished product at Akron was taken at August 31, 1917, and accordingly the physical inventory taken at the branches was ignored in the computation of the book inventory used in computing the profits of the fiscal year ended August 31, 1917, shown by the tax return.

In its return for the fiscal period ended August 31, 1916, the taxpayer claimed depreciation at the following rates:

> 2½ per cent on buildings.
> 3 per cent on machinery and tools.
> 10 per cent on furniture and fixtures.

In its return for the four months' period ended December 31, 1917, the taxpayer claimed depreciation at the following rates:

> 3 per cent on buildings.
> 5 per cent on machinery.
> 10 per cent on furniture and fixtures.

In an amended return filed for the same taxable period the taxpayer has claimed depreciation at the following rates:

> 3 per cent on buildings.
> 7 per cent on machinery and tools.
> 20 per cent on molds and cores.
> 10 per cent on furniture and fixtures.
> 20 per cent on auto trucks.
> 7 per cent on branch equipment.

The Commissioner has allowed a depreciation deduction of $5,588.25 and has disallowed the deduction of $5,977.72 of the $11,565.97 depreciation claimed on the amended return.

The original building upon which depreciation was claimed was of brick construction. A brick addition was made thereto in 1910 or 1911 at a cost of $14,000. A second was made in 1913, a third in 1915, and another a year or so later.

The machinery and tools upon which depreciation at the rate of 7 per cent is now claimed consisted principally of mill and colendar and tire-building machines. The average life of such equipment was claimed by the secretary and acting treasurer to be from 10 to 15 years.

The rate of depreciation claimed upon molds and cores is 20 per cent. There are two kinds of molds. One is used in the manufacture of solid tires, and consists of cylinders of cast iron or steel which are machined to form a part of the tire, one-half of the tire being made at a time. The other is used in the manufacture of pneumatic tires in which fabric or cord is used. These must be made on a core. This core is a cylinder of cast iron or steel on which the fabric or cord is laid. The core is put into the mill for machining and the matter is then handled in the same manner as for the solid tires.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, in accordance with Rule 50.

### OPINION.

SMITH: The taxpayer's petition alleges that the Commissioner erred in computing the alleged deficiency for the period September 1 to December 31, 1917, in the following manner:

1. In disallowing as a deduction from gross income an amount of $9,558.92 which the revenue agent making an examination of the taxpayer's books of account alleged was an error by the taxpayer in general expense impossible to allocate.

2. In allocating to the taxable year ended August 31, 1917, and the four months' period ended December 31, 1917, a discrepancy between book and physical inventories discovered at December 31, 1917.

3. In failing to allow as a deduction sufficient depreciation on plant and equipment.

The Commissioner confesses error with respect to the disallowance of $9,558.92, general expense.

With respect to the second allegation of error, it is to be noted that the taxpayer claims not to have taken inventory at the close of its fiscal year ended August 31, 1917. The net income shown on the tax return was made upon the basis of a book inventory. A physical inventory of finished product was taken at the taxpayer's branches but this was ignored in making up the tax return. This physical inventory showed finished product at the branches of $189,995.49, whereas the taxpayer's book inventory showed finished product at the branches of only $16,552.08. The taxpayer now claims that the true inventory at August 31, 1917, was $994,517.61, instead of $886,369.44, the amount shown upon the tax return; in other words, the taxpayer claims that there should be added to the book inventory at the date mentioned $108,148.17, or an amount in excess of the discrepancy in the inventory found at December 31, 1917.

The Board is not satisfied from the evidence before it that the true inventory at August 31, 1917, was $994,517.61. It may have been, and probably was, greater than $886,369.44, the amount shown by the book inventory. But the taxpayer has submitted no evidence which convinces the Board that the true inventory at August 31, 1917, was in excess of $941,180.57, the amount allowed by the Commissioner.

Prior to 1917 the taxpayer charged off very little depreciation upon its depreciable properties. In its amended returns for the fiscal year ended August 31, 1917, and for the four months' period ended December 31, 1917, the taxpayer claimed deductions of $31,-616.58 and $11,565.97, respectively, for depreciation. The amounts allowed by the Commissioner for these periods were $11,176.50 and $5,588.24, respectively. Depreciation upon buildings was allowed by the Commissioner at the rate of 2½ per cent per annum, which we think was ample. We think, however, that depreciation was sustained on certain of the depreciable assets at rates in excess of those originally applied by the taxpayer. The rates which should be applied for each of the respective periods are at the per annum rates of—

|                          | Per cent. |
|--------------------------|-----------|
| Buildings                | 2½        |
| Machinery and tools      | 7         |
| Molds and cores          | 15        |
| Furniture and fixtures   | 10        |
| Auto trucks              | 20        |
| Branch equipment         | 7         |

These rates of depreciation should not be applied for years prior to the fiscal year beginning September 1, 1916. *Appeal of Cleveland Home Brewing Co.*, 1 B. T. A. 87.